Intelligent Digital Systems v. Beasley Insurance May it please the Court, my name is Ira Levine. And I represent the appellants in this action. The District Court made fundamental errors in contract and document interpretation when it decided the various motions below. Particularly the initial motion, which was in which they improperly, which the District Court improperly converted Appellee's 12B6 motion into a motion for summary judgment and found that the insured v. insured exclusion was applicable when it found that Was the conversion the problem or the ultimate ruling? I'm sorry? Was the conversion from a motion to dismiss to summary judgment the problem or was it the ultimate conclusions? In this particular case, Your Honor, it was both. Why would it matter at this point? After trial, upon appeal, whether it was a 12B6 or whether it was converted to It is, it was an error in the procedure, but it was also an error in the substance because the court below overlooked well-settled principles of law, which hold that the insured v. insured exclusion does not apply to individual claims brought by claimants in their individual What's the well-settled law? In this particular case, Princeton University v. National Union Fire Insurance, where In the clause, the insured v. insured clause in that case, have some limiting language which doesn't exist in our case? It had some limited language, but the Is there any limiting language in this case, in the clause in this case? No, there was not. However, the appellate division, when it decided the case, stated clearly that it rejected the contention that the policies insured versus insured exclusion applied to claims brought against insured entities by individual insureds acting in their individual capacities. Language here is any claim by or on behalf of or at the direction of any of the insureds. That is correct, but Any language that says in their capacity as officers and directors? In this particular case? Yeah. No, there is the language You're asking us to read that language into the clause. Absolutely, because the purpose of the insured versus insured exclusion, particularly within the facts of this case, the cause of action that accrued by the appellants against the underlying corporation and the individual insureds actually accrued before the alleged appointment as a director. Since the purpose of the insured versus insured exclusion is to prevent collusive claims, it seems to, it is our position. I mean, there was arguably collusion here when the other directors agreed to the entry of more than $2 million in judgements against them, which they knew couldn't be collected against them. No, that is not, the collusion would be with the commencement of the litigation, follow. Why wouldn't this qualify as collusion when they know they can't be touched for those judgments, but they're setting it up so that the insurance would have to pay for it? Claims, the device of taking non-recourse assignments of claims where the insured essentially consents to a judgment has never, by any court, been deemed to be a collusive claim. And if, in fact, it was a collusive claim, the court would have the remedy to either vacate or set aside the claim. These types of assignments are routinely given where there is an issue of coverage, where an insurance company declines coverage, and the issue is then brought by the plaintiff who has the capability and the wherewithal and the imperative to assert, to challenge, as in this case, the denial of coverage. The other particular issue in this case is that the court below held that the word duly, duly elected or appointed, was some type of ambiguous phrase. And in doing so, the court below ignored well-settled principles of New York law, which find- Your position is that Mr. Russ was not duly elected or appointed? That is correct. And explain why that's your position. The Board of Visual Management Systems in July of 2007 expanded its board by a vote in which they first had a formal expansion from four to five. And then appointed upon the newly created vacancy of a fifth board member. In this particular case, as we've pointed out, that did not take place. There was no expansion. Is there a bylaw that requires a formal separate vote to increase the number of board members? The bylaw does require, it makes reference to, newly created vacancies. So what the bylaw states, therefore, is in the first instance as part of proper corporate governance. You're saying if they had one vote that said we're going to create a sixth vacancy and then had an immediate second vote appointing Mr. Russ, that would be fine? That would have been acceptable, and that- Doing it in one step, that's not acceptable? No, no, no, in the prior July resolution, it was one motion. The motion, and I'm paraphrasing, is that the motion is made to expand the board and upon the expansion of the board to appoint, I believe, Mr. Moe as the fifth director. A similar type, unitary motion that would have solved that issue would have been sufficient. In this particular case, there wasn't even any motion like that. The motion was simply that in the event the transaction closed, and the operative word in the resolution was if, then Mr. Russ would become a director. Transaction did close. The transaction did close. There was no indication, however, there was no corporate resolution, there was no testimony or any evidence to suggest from VMS or elicited by the appellee as to when the alleged appointment was in effect. And as a matter of fact, the record is clear that Mr. Russ strained to find out when his effective date was, when he became a director, and there was no proper corporate governance on that issue. I see that I've passed my time. You have some time for rebuttal. We'll hear from the other side. Thank you very much. May it please the court, my name is Chris Strangowski. I am counsel to the appellee, Beasley Insurance Company. The appellants raised ten points on appeal in their brief. I'm happy to answer questions about any of them. There are two, however, that I would like to address. The first is the primary point made by appellants, that they do not believe that the insured versus insured exclusion should apply to Mr. Russ in this case, because the claim he brought was not brought in his capacity as a director. And I- The argument is we should read that language into the clause. Correct, your honor, and the court respectfully should not read such language into the clause. The trustees of Princeton University case is very clear in reading both the trial court ruling and then the first department affirmation of the trial court's ruling. That in fact, the insured versus insured exclusion there was quite limited. The trial court footnoted that the exclusion in that matter was more limited than the ordinary insured versus insured exclusion in DNL policies. And therefore, the first department, when affirming the trial court's rejection of the argument that the IVI clause there applied to claims brought by individual directors against other individual directors, it was because the IVI exclusion in that case did not exclude it. How do you respond to the argument that the IVI clause was not intended to address all claims, but only the kind of claims where they're suing in a capacity as a director or officer? Well, the intent of the parties in the insurance agreement is to be construed through ordinary examination of the four corners of the document. And the IVI clause in this case makes plain that the parties intended to exclude any claim brought by an insured, which was defined as a director and officer. Which is further defined as a director and officer is one who is, who was, is, or in the future shall be, duly appointed an officer and director of the company. In fact, if you consider the language here that includes shall be appointed in the future, this policy actually was intended to, this language was intended to include claims precisely of the sort brought by Mr. Russ here. That is, when he began negotiating and in this underlying suit, as is alleged, his claims accrued. He was intended to be a director, and in fact, became a director. But could you focus on the duly appointed director aspect of this? I guess there was a kind of conditional appointment based on the expected merger. But the bylaws seem to outline corporate procedures for filling vacancies and newly created directorships resulting from any increase in the authorized number of directors. Here, it looked to me as though there was an implicit, there was a resolution in which it was implicit that the number of directors would be increased and Mr. Russ would fill that position. But it struck me as odd still that there wouldn't have been a resolution saying we're now increasing the number of directors to x. We nominate Mr. Russ to fill that position, and we vote to appoint him. Wouldn't that be due appointment? Why should we treat this as duly appointed? Because under the, the question is whether the exercise of the board's authority on February 26th, 2008 was pursuant to the bylaws that expressly set forth the board's authority. And the trial court below found that the bylaws were unambiguous on appeal. On appeal, the appellant claims, excuse me, the trial court below found they were ambiguous. Sending it to a jury trial. And on appeal, the appellant claims that they are unambiguous. Well, just examination of the particular bylaws, we believe, puts to rest any question of ambiguity and the board's authority. 2.6 reads a majority of the authorized number of directors shall constitute a quorum. Unambiguous. And a majority vote of a quorum shall be an act of the board. Unambiguous. And therefore, it's undisputed that on February 26th, 2008, there was a quorum and that they all unanimously voted. 2.1 indicates that there shall be no, there's no cap on the number of directors. The board is empowered to increase the number of directors. Therefore, it's undisputed, it's unambiguous and undisputed that at the board meeting, they had the authority to increase the board of directors. And that's critical. They had the authority under the bylaws. 2.2 reads that a newly created directorship, resulting from any increase in the authorized number of directors, may be filled by a majority of the directors. There too, it is clear and undisputable that the board had the authority to not only increase the number of directors, but to appoint a person or persons to fill the newly created directorship seats. When you look, therefore, at the February 26th, 2008 minutes, and you examine whether the board had the authority to do what it did, under the unambiguous review of those bylaws, the answer is plainly yes, they had the authority. And is there Nevada law that would give us comfort about whether Nevada interprets bylaws about these governance issues strictly or is more relaxed and comfortable with the kind of implicit reading that you're offering? Well, the answer is yes, there is Nevada law on the principle that for corporate board action to be effective, there needs to be substantial compliance with the bylaws. And we had argued that to the court, that even if you view what had happened as not being technical compliance, but we would disagree. But even if you were to view it that way, the act of the board cannot be undermined or undone or is not ineffectual, so long as there's substantial compliance. And I can find that for you, your honor, in the briefing. Rattle versus Secretary of State. Yes, your honor. Now, we also cite a case, the absence of specificity in the bylaws about how to handle a situation where the board wants to do both, increase the seat by one, and point someone to fill it. Does not create an ambiguity. And we respectfully, we cite a case in a brief on page 52 called Street versus Viddy, which is a 1998 Southern District case. And there, the court, we thought, wisely held in review of a similar situation under a shareholder agreement. Not bylaws, but shareholder. And the quote from that case that is relevant here is that we conclude that the failure to specify a procedure for filling the seats of retiring directors does not constitute an ambiguity in the shareholder's agreement. Here, too, the absence of the specificity that the appellants imagined should exist. And I might point out that I think probably most of us in this room, by virtue of where we practice law, have had seen our share of corporate bylaws. There isn't that kind of precision. There isn't that kind of directive within a bylaw to tell a board how to carry out the authority that is granted to them in the bylaws in their corporate board meetings. That's more custom tradition, if anything else. There are corporate formalities, but they're not found within the bylaws. Respectfully, the absence of the specificity doesn't create an ambiguity. And furthermore, what's required is that the minutes of these bylaws reflect that there's an intent to increase the number of seats and appoint Russ to fill the newly created vacancy. I would respectfully submit, Your Honor, that when there are five directors, the only directors of the board, sitting around in a room, introduced to Jay Russ. And where it's fully contemplated and discussed that he is going to become a member of this board if this deal closes. And he's excused from the room, so deliberations may take place. And there's outside counsel and in-house counsel, the president of the company, is describing the terms of the deal. When there's a unanimous vote by all five directors to approve the appointment of Russ to the board, conditioned only on the closing of the transaction, that the intent to increase the number of seats from five to six is implied. And may appropriately, and should have been appropriately held by the trial court here, as a matter of law, an appropriate exercise of the board's authority. I would ask respectfully that the court uphold the district court's final judgment. We went to trial. The court didn't agree with the argument I just made. We went to trial. We proved before a jury that, in fact, all corporate formalities and requirements that were necessary were undertaken, and that this was, in fact, a very straightforward exercise of the board's authority, and as a matter of fact, the jury found that Jay Edmund Russ was duly appointed to the board. Thank you. Thank you. We'll hear the rebuttal. I would respectfully point out to the court that the phrase duly elected or appointed, or the word duly, is not appellant's word. It is the word of the policy. Do you agree that Nevada law requires only substantial compliance? No, I do not agree for two reasons. First of all, the contract, I don't believe that Nevada law applies in this case, because one of the findings- The interpretation of the application of the bylaw. Of the bylaw. That's the interpretation of the policy. Then Nevada law would apply, but the substantial compliance has to mean that there is some adherence to custom and tradition. Well, we had a custom- In the scenario that counsel just outlined about the vote and evidence, putting it into the SEC filings, et cetera, he went to meetings. Why wasn't there substantial compliance? There wasn't substantial compliance because the board itself did not take a very necessary step, which was to, which was in fact to expand its number. That- It was implicitly expanding, at least implicitly expanding by appointing Mr. Russ as an additional director. For two reasons. The words of the resolution suggested further board action, number one. Number two, with all- They had added the words, we will create a spot and we will fill it with Mr. Russ. That would be enough? If there was some board action by which the board expanded its, just as it did at the most prior board meeting, had it taken a step whereby it expanded its number formally. From five to six, then yes. But in this particular case, they did not. And with all due respect, I submit to the court that a corporation, especially a public corporation, should not be allowed to act on what one would call implicit actions. We're talking about, I respectfully submit that a public corporation with bylaws, with the responsibility for public filings, should be explicit in its actions. Open, transparent, but nonetheless explicit in its actions. Thank you. Thank you very much. We have your argument, we'll reserve decision. Thank you. Thank you.